# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **EZRA BENJAMIN,** | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **3:19cv1187 (MPS)** |
| | : | |
| **COMMISSIONER OF CORRECTION,** | : | |
| Respondent. | : | |

## RULING ON PETITION FOR HABEAS CORPUS RELIEF

Petitioner Ezra Benjamin, a prisoner currently confined at the MacDougall-Walker Correctional Institution, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2002 state convictions rendered in the two sexual assault cases of victims D and C that were consolidated for trial in the Connecticut Superior Court for the Judicial District of Waterbury. *See* Petition, ECF No. 1 at 2. The respondent, Commissioner of Correction, has filed a memorandum in opposition to the Petition. ECF No. 16. Petitioner has filed a response thereto. Pet.'s Response, ECF No. 19.

In the instant petition, Petitioner presents three grounds for relief: (1) ineffective assistance of trial counsel because his attorney failed to properly investigate the case; (2) ineffective assistance of trial counsel because his counsel was called upon to render assistance under circumstances in which no competent attorney could do so under *United States v. Cronic*, 466 U.S. 648 (1984); and (3) ineffective assistance of trial counsel because his attorney failed to properly cross examine witnesses Charles Fontano and Detective Michael Silva. *See* Petition, ECF No. 1 at ¶ 19, pp. 9-18.

After consideration of the petition, Respondent's arguments, and Petitioner's response thereto, the court concludes that the petition should be DENIED.

1

## I.      Factual Background

In Connecticut Superior Court, criminal docket number CR01-304486, Petitioner was convicted for sexual assault in the first degree in violation of Connecticut General Statutes § 53a-70(a)(1), sexual assault in the second degree in violation of Connecticut General Statutes § 53a-60(a)(1), unlawful restraint in the first degree in violation of Connecticut General Statutes § 53a-95, and assault in the third degree in violation of Connecticut General Statutes § 53a-61(a)(1). In criminal docket number CR01-304482, Petitioner was convicted of sexual assault in the second degree, unlawful restraint in the first degree, and assault in the third degree. *See State v. Benjamin*, 2008 WL 2314082 (Super. Ct. May 19, 2008). The state court sentenced Petitioner on January 10, 2003 to a total effective sentence of forty years' imprisonment. *Id.*; *see also* Petition, ECF No. 1 at 2.

On direct appeal, the Connecticut Appellate Court determined that the jury could have reasonably found the following facts regarding the underlying offenses:

> At approximately 9 p.m. on the evening of September 26, 2001, the victim, D, who worked as a prostitute, was walking on Cherry Street in Waterbury and was approached by [Petitioner], who was driving his maroon Mitsubishi convertible. [Petitioner] asked D if she wanted a ride home and offered her $50. D agreed and entered [Petitioner]'s vehicle. [Petitioner] then drove to Fulton Park in Waterbury. Upon arriving at Fulton Park, [Petitioner] exited the vehicle. D, however, refused to exit until she received the $50. [Petitioner] then showed D some papers in his pocket that appeared to be money and D exited the vehicle. At that time, [Petitioner] seized D by the neck with his forearm and dragged her to a tree in the park. There, [Petitioner] began to beat D. [Petitioner] struck D in the head with a rock, causing a laceration, and also struck D in the head and eye. D attempted to fight back by scratching [Petitioner], but lost consciousness as [Petitioner] choked her. Upon regaining consciousness, D was partially unclothed. D was wearing only a bloody white T-shirt and one sneaker. Her pants and bra had been removed during the struggle.
>
> After seeing that [Petitioner] had left the scene, D asked people nearby to take her to St. Mary's Hospital, where she was examined. When D went to the emergency room, her head, eye and throat were in pain, and she was bleeding from her head. D suffered

lacerations to her scalp and back, and facial trauma, and showed signs of life threatening strangulation.

During the same evening of September 26, 2001, the other victim, C, was working as a prostitute in the vicinity of Walnut Street and Orange Street in Waterbury. That night, C entered a vehicle operated by [Petitioner], a maroon Mitsubishi convertible with temporary license plates. After C entered the vehicle, [Petitioner] drove around the block and parked in a nearby lot. Once at the lot, [Petitioner] and C exited the vehicle. While outside the vehicle, [Petitioner] showed C $50 and then put the money back into his pocket. At that, C began to walk away. [Petitioner] seized C from behind and choked her with his forearm, which caused her to lose consciousness.

When C regained consciousness, her pants were pulled down, and [Petitioner] was sexually assaulting her. [Petitioner] still had his hand on C's throat. [Petitioner] then asked C if she wanted to die. C began to cry, and [Petitioner] removed his hand from her throat. C then began to scream and attempted to get away from [Petitioner], but lost consciousness once more when [Petitioner] strangled her again. When C regained consciousness, [Petitioner] had left. C then began to scream for help. She was found, partially undressed, by a friend. C's pants, underwear and jacket had been removed during the attack. C was taken to St. Mary's Hospital, where she was examined. Upon arriving at the hospital, C's eyes and nose were bloody, and there were marks on her neck, hands and legs. C was found to have abrasions to her face, trunk, chest area, back and extremities, and a bloody nose. She also had injuries to her eyes and contusions around her neck. As a result of being choked to unconsciousness, a life threatening condition, C displayed conjunctival hemorrhaging.

Both C and D were questioned by the police, and they provided a description of the assailant and the vehicle that he was driving. Officers then went to the area of Fulton Park where D was attacked. While at the scene of the attack, the police discovered, among other items, a remote keyless entry device for an automobile. Upon locating a maroon Mitsubishi convertible near the place where C was assaulted, the police used the entry device to unlock the vehicle's doors. The police then ascertained that [Petitioner] was the owner of the vehicle. That night, the police found [Petitioner] hiding naked in a cabinet in a bathroom closet in his apartment.

*State v. Benjamin*, 86 Conn. App. 344, 346-348 (2004).

At the trial, the jury considered the witness testimony, police evidence, and DNA evidence. *Id.* at 361.   The jury heard testimony, *inter alia*, about the victims' picking Petitioner out of an array of photographs; the victims' identification of Petitioner as the attacker; testimony from a witness who stated he had observed C get into Petitioner's vehicle shortly before the

3

attack; and the DNA evidence from Petitioner's clothing (including semen and blood stains), which connected Petitioner to the attack. *Id.* at 361-362

## II.      Procedural Background

Petitioner was charged in both attacks on D and C in two separate criminal cases for sexual assault in the first degree in violation of Connecticut General Statutes § 53a-70(a)(1), sexual assault in the second degree in violation of Connecticut General Statutes § 53a-60(a)(1), unlawful restraint in the first degree in violation of Connecticut General Statutes § 53a-95, and assault in the third degree in violation of Connecticut General Statutes § 53a-61(a)(1). *See* Resp. App'x. B, ECF No. 16-2 at 31-34. Petitioner pleaded not guilty to all the charges in both cases and elected to proceed to a jury trial. See Resp. App'x. B at 35. Attorney Robert Berke was appointed to represent Petitioner as a special public defender in early August 2002, although most of the pre-trial phase had been handled by other counsel. *See Benjamin v. Warden*, 2018 WL 793898 at *3 (Conn. Super. Ct. Jan. 11, 2018), *aff'd sub nom. Benjamin v. Comm'r of Correction*, 189 Conn. App. 905 (2019).

At the time of Attorney Berke's appointment, Petitioner faced trial in five separate cases. *See* Trial Transcript, Resp. App'x. P (8/28/02), ECF No. 16-29 at 2. By motion, the State sought to consolidate three of those cases for trial, including the two which are the subject of this federal proceeding. *Id.* Following argument on August 28, 2002, the trial court ordered the two cases concerning the attacks on D and C consolidated. *Id.* at 8. Attorney Berke had managed, however, to prevent these two cases from being consolidated with a third case concerning a sexual assault committed prior to the separate attacks on D and C. *Id.* at 6, 8.

4

Petitioner's jury trial began on October 16, 2002. *See* Trial Transcript, Resp. App'x. P (10/16/02), ECF No. 16-34. Petitioner's jury returned its verdict on October 29, 2002. Record on Direct Appeal, Resp. App'x. B, ECF 16-2 at 35-38. The jury found Petitioner not guilty on the charge of sexual assault in the first degree with respect to the attack on D, but otherwise convicted him of all charges in both cases. *Id.* On January 10, 2003, the trial court sentenced Petitioner to a total effective sentence of thirty years for his attacks on C. On the charges for the attack on D, the trial court sentenced Petitioner to a total effective sentence of ten years, to run consecutive to the convictions for the attack on C. *Id.* Thus, Petitioner received a total effective sentence of imprisonment of forty years. *Id.* at 26.

A.      **Petitioner's Direct Appeal**

Petitioner appealed from the judgment of conviction to the Connecticut Appellate Court, claiming that (1) his conviction in each information of assault in the second degree and assault in the third degree violated the prohibition against double jeopardy, (2) the court's instructions to the jury improperly reduced the State's burden of proof as to the element of restraint necessary to prove a violation of unlawful restraint in the first degree, and (3) he was denied his right to due process because of prosecutorial misconduct. *See Benjamin*, 86 Conn. App. at 345-46.

On December 14, 2004, the Appellate Court reversed the judgment of the trial court in part, remanding with direction to merge the sentences for the charges of assault in the third degree with those of the second-degree assault. *Id.* at 352, 362. The judgments were affirmed in all other respects. *Id.* at 362. Petitioner did not seek discretionary review of the Appellate Court's decision from Connecticut Supreme Court. On May 2, 2005, Petitioner was resentenced in

accordance with the Appellate Court's decision with no changes to the total effective sentence. Pet.'s Habeas Appeal Brief, Resp. App'x. J, ECF No. 16-10 at 8.

### B.   Petitioner's State Habeas Corpus Case

On July 12, 2012, Petitioner initiated a habeas corpus action in the Judicial District of Tolland, CV12-4004820-S. Case Detail, Resp. App'x. G, ECF No. 16-7. Petitioner was assigned counsel in his habeas proceeding, but he elected to proceed *pro se* at the time of trial. *Id.*; *see also Benjamin v. Warden*, 2018 WL 793898 at *1.

On May 12, 2016, Petitioner filed an amended petition which became the operative pleading at the subsequent state habeas trial. *See* Pet.'s Habeas Appeal Brief, Resp. App'x. J (Amended Petition), ECF No. 16-10 at 49-64. In its decision, the state habeas court identified the amended petition claim's as follows:

> [Petitioner] alleges that his trial counsel, appointed two months before the trial began, rendered ineffective assistance in three ways. First, he allegedly failed to properly investigate the DNA evidence relied upon by the state to obtain his conviction, including the circumstances under which his own DNA sample was obtained by the state. Second, he claims that the circumstances under which trial counsel was called upon to represent him - an appointment two months prior to trial combined with the state's late disclosure of DNA evidence and trial counsel's obligations in another trial proceeding contemporaneously with this one - rendered trial counsel's assistance presumptively ineffective under *U.S. v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Finally, he maintains trial counsel's cross examination of several witnesses at trial was inadequate.

*Benjamin v. Warden*, 2018 WL 793898 at *1.

Petitioner's habeas trial was held on July 21, 2017. *See* Habeas Trial Transcript, Resp. App'x. Q (7/21/17), ECF No. 16-45. Petitioner presented testimony from Anita Vailonis, a criminalist at the state lab, who also testified at Petitioner's underlying criminal trial (*id.* at 15-74); Kevin Daly, an attorney for the City of Waterbury, which responded to a FOIA request from

petitioner (*id.* at 75-80); and Michelle Jones, Petitioner's sister (*id.* at 81-87). Petitioner did not testify. Respondent presented testimony from trial attorney Robert Berke. *id.* at 90-148.

On January 11, 2018, the state habeas court denied the petition. *Benjamin v. Warden*, 2018 WL 793898. The state habeas court also denied Petitioner's petition for certification to appeal to the Connecticut Appellate Court on January 29, 2018. *See* Case Detail, Resp. App'x. G, ECF No. 16-7 at 5.

Petitioner, represented by assigned counsel, Justine Miller, filed an appeal of the state habeas court's denial of his petition. *See* Pet.'s Habeas Appeal Brief, Resp. App'x. J, ECF No. 16-10. On appeal, Petitioner presented the following three issues: (1) "Whether the habeas court abused its discretion when it denied the petitioner's petition for certification to appeal it[s] decision denying the petitioner's writ of habeas corpus[;]" (2) "Whether the habeas court erred in denying the habeas petition where no competent attorney could have provided effective representation under the circumstances and prejudice should be presumed[;]" and (3) "Whether the habeas court erred in denying the habeas petition where habeas trial counsel performed deficiently and prejudice resulted." *Id.* at 4.

In a *per curiam* decision dated April 11, 2019, the Appellate Court dismissed the appeal without further comment. *Benjamin v. Commissioner of Correction*, 189 Conn. App. 905 (2019).

Petitioner sought discretionary review from the Connecticut Supreme Court, with the following question presented for review: "Did the Appellate Court err in summarily dismissing the petitioner's [appeal], finding that the habeas court did not abuse its discretion denying the petitioner's [petition] where counsel faced circumstances in which no competent attorney could ha[ve] provided effective assistance and where petitioner's counsel['s performance] was

7

deficient and prejudicial." Petition for Cert., Resp. App'x. M, ECF No. 16-13; *see also* Opp. to Petition for Cert., Resp. App'x. N, ECF No. 16-14.

On June 12, 2019, the Connecticut Supreme Court denied the petition for certification without further comment. *Benjamin v. Commissioner of Correction*, 332 Conn. 906 (2019).

## III.     Review of the Merits

This Court will entertain a petition for writ of habeas corpus challenging a state court conviction under § 2254 only if Petitioner claims that his custody violates the Constitution or federal laws. *See* 28 U.S.C. § 2255(a). A claim that a state conviction was obtained in violation of state law is not cognizable in this court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotations omitted). This court cannot grant a petition for writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[1] This is a very difficult standard to meet. *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013).

Clearly established federal law is found in holdings, not dicta, of the United States

---

[1]  The federal court examines the "last reasoned decision" by the state courts in determining whether a federal claim was adjudicated on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Supreme Court at the time of the state court decision. *See Howes v. Fields*, 565 U.S. 499, 505 (2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)). A decision is "contrary to" clearly established federal law when it applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when it has correctly identified the law but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle. *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008).

It is not enough that the state court decision is incorrect or erroneous. *Eze v. Senkowski*, 321 F.3d 110, 124-25 (2d Cir. 2003). Rather, the state court's application of clearly established law must be objectively unreasonable, a substantially higher standard. *Id.*; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Thus, a state prisoner must show that the challenged court ruling "was so lacking justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Williams v. Taylor*, 529 U.S. 362, 389 (2000) ("state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated").

To determine whether habeas relief should be granted, the federal court must consider: "(1) Was the principle of the Supreme Court case law relied upon by the petitioner 'clearly

established' when the state court ruled? (2) If so, was the state court's decision 'contrary to' that established Supreme Court precedent? (3) If not, did the state court decision constitute an 'unreasonable application' of that principle?" *Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2000), *cert. denied*, 534 U.S. 924 (2001).

When reviewing a habeas petition, the court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). Petitioner bears the burden of rebutting that presumption by clear and convincing evidence. *Id.* Moreover, this court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## A. Petitioner's Federal Petition

Petitioner's three grounds for relief assert claims of ineffective assistance of counsel:  (1) ineffective assistance of trial counsel for failure to properly investigate the case; (2) ineffective assistance of trial counsel because his counsel was called upon to render assistance under circumstances in which no competent attorney could do so under *United States v. Cronic*, 466 U.S. 648 (1984)); and (3) ineffective assistance of trial counsel for failure to properly cross examine witnesses Charles Fontano and Detective Michael Silva. *See* Petition, ECF No. 1 at ¶ 19, pp. 9-16.

To succeed on an ineffective assistance of counsel claim, the moving party must demonstrate that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The performance prong of the two-part *Strickland* test requires a showing that "counsel's representation fell below

an objective standard of reasonableness," in light of "prevailing professional norms." *Strickland*, 466 U.S. at 688.

To satisfy the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "In applying this standard, a reviewing court must make every effort ... to eliminate the distorting effects of hindsight and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] might be considered sound trial strategy." *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (internal quotation marks omitted) (brackets in original). "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001).

In *United States v. Cronic,* 466 U.S. 648 (1984), the Supreme Court "recognized a narrow exception to *Strickland*'s holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense." *Fla. v. Nixon*, 543 U.S. 175, 190 (2004) (citing *Cronic*, 466 at 658). The Supreme Court identified three "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658-9. *See Bell v. Cone*, 535 U.S. 685, 695–96(2002). As the Supreme Court explained in *Bell*, a presumption of prejudice arises (1) "where the accused is denied the presence of counsel at 'a critical stage,' ... that held significant consequences for the accused[;]" (2) "if 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[;]" or (3) "where counsel

is called upon to render assistance under circumstances where competent counsel very likely could not[.]" *Id.* (citing *Cronic*, 466 U.S. at 659–662) (other internal citations omitted).

When pursuing a state-exhausted ineffective assistance claim in federal court, it is not enough for the petitioner "to convince [the] federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Eze*, 321 F.3d at 124 (internal quotation marks omitted). Rather, petitioner must show that the state habeas court applied *Strickland* in an objectively unreasonable manner. *Id.*; *see also Williams v. Taylor*, 529 U.S. 3 at 410 (unreasonable application of federal law different from incorrect application of federal law).

Respondent's opposition to the petition argues that Petitioner's grounds for relief must be denied. Resp. Opp., ECF No. 16. Petitioner's reply states that although he does not contest his responsibility for assaulting victim D, his incarceration is unlawful as it pertains to victim C due to evidence planted on his clothing and vehicle in order to obtain a conviction. Pet.'s Response, ECF No. 19 at 3-4.

Because Petitioner's second ground for relief raises the issue of whether ineffective assistance of counsel prejudice should be presumed under *Cronic* due to his counsel's appointment only two months prior to trial, late disclosures, and his counsel's trial obligations in a separate case, the court will first address this ground for relief and then will consider Petitioner's first and third grounds for relief. *See* Petition at ¶ 19, ECF No. 1 (grounds one through three); *see also Benjamin v. Warden*, 2018 WL 793898 at *1.

**B.  Whether the State Habeas Court Reasonably Considered Petitioner's Ineffective Assistance Claim under *Cronic***

The state habeas court correctly stated that the presumption under *Cronic* applies "under circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," and it identified that prejudice may be presumed "(1) when counsel is denied to a defendant at a critical stage of the proceeding; (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) when counsel is called upon to render assistance in a situation in which no competent attorney could do so." *See Benjamin v. Warden*, 2018 WL 793898, at *5 (citations omitted). In considering whether Petitioner's claim satisfied the standards under *Cronic*, the habeas court considered Petitioner's circumstances and how they were distinguishable from those at issue in *Cronic*:

> The court's review of the criminal trial transcript reflects not only that Mr. Benjamin had the assistance of counsel throughout the trial, his attorney conducted a diligent and competent defense overall. Mr. Benjamin emphasizes the fact that Attorney Berke was appointed only two months prior to trial, had to contend with the state's late disclosure of evidence and was also involved in another case at the time of Mr. Benjamin's trial. Attorney Berke, however, did not testify that he was under inordinate constraints or deprived of an adequate opportunity to prepare for trial. He obtained the continuances he needed in order to prepare Mr. Benjamin's defense. In *United States v. Cronic*, the Court declined to apply a presumption of prejudice under much more extreme circumstances. In that case, the court appointed a young real estate attorney with no criminal or trial experience only twenty-five days prior to the trial of a mail fraud case, involving thousands of documents, that the Government had spent four and one-half years investigating. Attorney Berke, in contrast, was a very experienced criminal trial lawyer who had handled many sexual assault cases and clearly had the background and ability to examine, analyze and question the state's DNA evidence. The constraints on his performance identified by Mr. Benjamin are not unusual for such an experienced practitioner and Attorney Berke managed those constraints appropriately, as experienced practitioners do. The adversarial process did not break down because of Attorney Berke's late appointment, the state's late disclosure of evidence and the trial awaiting Attorney Berke at the end of Mr. Benjamin's trial. See *United States v. Smith,* 982 F.2d 757 (1992) (counsel's appointment over the weekend to represent the petitioner at a revocation hearing on Monday did not implicate the *Cronic* standard).

*Id.*

13

Although appointed twenty-six days prior to the joinder hearing, Attorney Berke was able to prevent the joinder of charges from an earlier sexual assault. *See* Trial Transcript, Resp. App'x. P (8/28/02), ECF No. 16-29 at 8. Moreover, Petitioner has not shown that the joinder of the cases of victims D and C would have been preventable in light of the cross-admissible facts in the two cases as the two assaults occurred on the same night and involved similar conduct, locations, victims and vehicle. *See State v. Atkinson*, 235 Conn. 748, 765 (1996) (joinder is appropriate when evidence is cross admissible).

Petitioner complains that Attorney Berke had to prepare for another criminal sexual assault case pending in the Judicial District of Ansonia/Milford during the months preceding Petitioner's trial. Although Attorney Berke noted that he had a jury selection in the Milford case on October 3, 2020, he indicated that the evidence would not begin until after Petitioner's trial. Trial Transcript, Resp. App'x. P (10/02/02), ECF No. 16-32 at 38-42.

Petitioner complains that Berke also had to prepare for a motion in limine argument on October 2, 2002, but he has not shown that Attorney Berke's performance was deficient with regard to Petitioner's case. At the habeas trial, Attorney Berke testified that it was "a challenge just trying to jockey both, but that's not the first time I've been forced to do that." Habeas Transcript, Resp. App'x. Q, ECF No. 16-45 at 104, lines 11-14.

With respect to the late disclosure of DNA reports, Attorney Berke was able to obtain continuances when necessary. On October 2, 2002, the trial court instructed the State to disclose its report prior to trial and ordered that counsel be afforded an opportunity to consult with an expert. Trial Transcript, Resp. App'x. P (10/02/02), ECF No. 16-32 at 40-42. Two days later, Attorney Berke informed the trial judge that he did not need a lengthy continuance to prepare for

cross examination, but the trial court afforded him a break in the trial of a half day plus the weekend to prepare his cross examination of the DNA expert. Trial Transcript, Resp. App'x. P (10/04/02), ECF No. 16-33 at 9-13. The DNA expert testified on Friday, October 18, 2002. *Benjamin v. Warden*, 2018 WL 793898 at *3. On Monday, October 21, Attorney Berke's cross examination was further continued to October 23, because a criminalist report identifying evidence of blood and semen on clothing had surfaced (the trial judge denied Berke's motion for a mistrial). Trial Transcript, Resp. App'x. P (10/21/02), ECF No. 16-37 at 10-11.

Thus, the habeas court reasonably concluded that Attorney Berke had obtained continuances as necessary to manage the constraints of the situation as an experienced professional and that the adversary process did not break down. *Benjamin v. Warden*, 2018 WL 793898 at *5. The habeas court observed that Attorney Berke "obtained time from the court to prepare his cross examinations both before and after the state's experts testified on direct examination, he consulted with his own expert, he cross examined the state's witnesses extensively, and he brought in a criminalist from the state lab to explain that trace analyses of the sexual assault kits failed to connect Mr. Benjamin to the victims." *Id.* at *6. It also noted that Attorney Berke had made a tactical decision to request a break in the trial (rather than "move to preclude the DNA report disclosed on September 30, 2002 or to seek a continuance of the trial,"), which was arguably more effective because he procured an extended period of time to prepare his cross examinations *after* the state's witnesses testified on direct. *Id.* at *6.

Review of the underlying record shows that the habeas court reasonably concluded that the circumstances of Petitioner's case involving Attorney Berke's late appointment, his other obligations, and the States' late disclosures did not justify the presumption of prejudice to

15

Petitioner in accordance with *Cronic*. Because the state habeas court decision reasonably applied the standard articulated by *Cronic*, Petitioner's claim for habeas relief on this ground must be denied.

### C. Petitioner's Ineffective Assistance of Trial Counsel Claims:   Grounds One and Two.

This Court concludes the habeas court properly considered the record relevant to Petitioner's ineffective assistance of counsel claims under both *Strickland*'s performance and prejudice prongs to determine (1) whether Petitioner had demonstrated that "his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law[;]" and (2) whether Petitioner demonstrated "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Benjamin v. Warden*, 2018 WL 793898, at *4 (citations omitted).

### 1. Whether the State Habeas Court Reasonably Considered Petitioner's Ineffective Assistance of Trial Counsel Based on Failure to Properly Investigate DNA Evidence:   Ground One

Petitioner asserts that Attorney Berke should have argued for preclusion of the late disclosed DNA report rather than seek a continuance; spent more time conferring with the expert so that he could undermine the state's DNA expert; filed a motion to suppress after he heard conflicting testimony indicating that Petitioner's blood may have been drawn prior to the issuance of the authorizing warrant; and contacted Petitioner's sister and brother-in-law. *See* Petition, ECF No. 1 at ¶ 19(a) p. 10-11 (ground one); *see also* Pet.'s Response, ECF No. 19 at 19 (referencing Pet.'s Habeas Appeal Brief, App'x. J, ECF No. 16-10 at 30-39).

16

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. An attorney's decision not to investigate must be assessed for reasonableness under the circumstances. *See id.* Moreover, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

Where an ineffective assistance of counsel claim is premised on counsel's failure to make a suppression motion, a showing of prejudice under *Strickland* requires that the underlying suppression claim was "meritorious" and that "there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Maldonado v. Burge,* 697 F.Supp.2d 516, 525 (S.D.N.Y. 2010) (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986)).

### a.  Attorney Berke's Decisions Relevant to Late Disclosure of Evidence

The habeas court first determined that Attorney Berke had "thoroughly investigated, examined and tested the state's DNA evidence[,]" noting that Attorney Berke had obtained time to prepare for his cross examinations "both before and after the state's experts testified on direct examination[;]" consulted with an expert; "extensively" cross examined the state's witnesses; and had a "criminalist from the state lab … explain that trace analyses of the sexual assault kits failed to connect [Petitioner] to the victims." *Benjamin v. Warden*, 2018 WL 793898 at *6. The habeas court also concluded that Attorney Berke had made reasonable tactical decisions "based on sound trial strategy," not to preclude the DNA report but to procure a continuance to prepare his cross examinations of the State's witnesses, and to "undermine the reliability of the state's DNA

evidence, rather than assert a claim that the police had fabricated or planted evidence." *Id.* Thus, the habeas court concluded that Attorney Berke made the "reasonable strategic decision" not to argue that the police had fabricated or planted evidence, which was entitled to deference, so as to avoid "alienat[ing] the jury with a sensational claim he could not prove" and instead "to expose the improprieties in the handling of evidence before the jury and allow the jury to draw its own conclusions." *Id.*

As to the second prong, the habeas court concluded that Petitioner failed to demonstrate that "a continuance of the trial would have impacted the reliability of the DNA evidence beyond what Attorney Berke was actually able to accomplish at trial." *Id.* at *7. The court observed that "the late disclosure of DNA evidence" would not "have led the trial court to grant a motion to suppress or exclude the DNA evidence[,]" although the court "might have granted a continuance of the trial", which was "arguably not as desirable as the outcome actually achieved by Attorney Berke by securing an extended break in the middle of the trial." *Id.* The court noted further that Petitioner "failed to produce any evidence of bad faith on the part of the state in withholding DNA evidence" and "the transcript of the criminal trial proceedings suggests nothing of the kind." *Id.*

Upon review of the record, this court concludes the habeas court properly considered that Petitioner challenged Attorney Berke's strategic or tactical decisions with regard to seeking a continuance rather than preclusion of evidence. As the habeas court observed, the record indicated that the state's late disclosure of DNA evidence would not "have led the trial court to grant a motion to suppress or exclude the DNA" *Id.* at *7. Under Connecticut law, a court should avoid preclusion if a less severe remedy will suffice and a continuance is generally adequate to

cure an unintentional nondisclosure. *See State v. Jackson*, 304 Conn. 383, 412-13, n. 23 (2012); *see also* Conn. Gen. Stat. ¶ 54-86k(c) (court has discretion to allow continuance or "under the appropriate circumstances" to bar evidence). Thus, the record also fails to demonstrate that Attorney Berke's decision not to seek preclusion of the DNA evidence resulted in prejudice. Petitioner's claim that Attorney Berke could have undermined the state's DNA expert had he devoted more time to conferring with his own expert to analyze the DNA evidence is speculative.

Accordingly, the habeas court reasonably applied the standards under *Strickland* to Petitioner's claim that Attorney Berke rendered ineffective assistance of counsel with respect to the late disclosed DNA. The Petition for habeas relief must be denied on this ground.

### b.  Failure to File a Motion to Suppress Due to Conflicting Testimony

Petitioner argues that Attorney Berke provided ineffective assistance of counsel by not filing a motion to suppress evidence about his blood testing. The habeas court first considered whether the trial testimony had raised any inconsistencies that showed Petitioner's blood had been drawn prior to the issuance of the warrant:

> At 2:20 p.m. on September 27, 2001 a warrant was obtained authorizing the police to obtain biological samples from Mr. Benjamin for purposes of blood testing as well as DNA analysis and comparison with the two victims. These samples were obtained at St. Mary's Hospital by Dr. Stephen Holland. According to Doctor Holland, refreshing his recollection from his report, he did this work between 3:30 p.m. and 4:00 p.m. that day. There was arguably conflicting testimony, however, from Detective Silva and Sargent Eugene Coyle. Neither of these witnesses testified at the habeas trial. At Mr. Benjamin's criminal trial, Detective Silva testified that after leaving Mr. Benjamin's home on the initial visit in the early morning of September 27th, he was at the hospital "in the later hours of that morning." His testimony suggests that he may have been present at the hospital when Mr. Benjamin's samples were obtained, but he also testified that it was another Detective, Lucinda Lopes, who received the kit from Dr. Holland. The significance to Mr. Benjamin is that it is possible to infer that the samples were taken before the warrant was obtained, if it is inferred from Detective Silva's testimony that all

the testing occurred "in the later hours of that morning." It is also possible to infer, however, that Detective Silva was present at the hospital when the victims' samples were obtained that morning, not when Mr. Benjamin's samples were obtained later in the day. Sargent Coyle was involved in the initial investigation at both crime scenes and at Mr. Benjamin's home when he was arrested. He spoke to him briefly at the police station, but had no dealings with him after that. He was not present at the hospital at any time that day. He testified that he did not know when Mr. Benjamin's sexual assault kit was done, but nevertheless he believed it was done between 9:00 a.m. and 11:00 a.m. that morning. This testimony was elicited by Attorney Berke on cross examination. Sargent Coyle also testified on redirect, however, that the samples were taken after the search warrant was obtained.

Mr. Benjamin claims that Detective Lopes, also with the Waterbury crime lab, gave conflicting testimony as well. The court's review of that testimony, however, reflects that it was not inconsistent with that of Dr. Holland. Mr. Benjamin's argument is based upon the contextual events of that day for Detective Lopes, two doctors' appointments she attended in order to get cleared for upcoming surgery. Mr. Benjamin believes her testimony contradicts Detective Silva's testimony that it was her who received the evidence obtained by Dr. Holland from Mr. Benjamin. Her first appointment delayed her arrival at work on the morning of September 27th. She arrived between 10:45 a.m. and 11:00 a.m. She then was present during the search of Mr. Benjamin's home, but left there for her second appointment scheduled for 1:30 p.m. Mr. Benjamin concludes it could not have been Detective Lopes who obtained the samples taken from Mr. Benjamin, although she testified she was there, because there is no evidence that she returned to work after the second appointment. There is evidence, however, that she did return to work after that appointment. Detective Lopes testified that she participated in the examination of Mr. Benjamin's car, which took place "late in the day on the twenty-seventh, because we went to [Mr. Benjamin's home] first, then we went to St. Mary's Hospital for the search warrant on Mr. Benjamin, and then the vehicle."

*Benjamin*, 2018 WL 793898 at *2.

The habeas court noted that Attorney Berke could have sought to suppress the DNA evidence "based on the limited conflicts that did exist between the testimony of Detective [Silva] and Sargent Coyle and that of Dr. Holland and Detective Lopes[,]" but he "had very little chance of success since the trial court would have had to credit the vague and speculative testimony of Detective [Silva] and Sargent Coyle on the subject against the more reliable testimony of Dr. Holland based on his review of his contemporaneous record of the examination, as well as

20

Detective Lopes' testimony that she was the officer who obtained Mr. Benjamin's samples at the hospital on the afternoon of September 27th." *Id.* at *6. The habeas court concluded that "such a tactic also would have provided the police witnesses an opportunity to better prepare for their trial testimony, and that Petitioner had not established whether Attorney Berke was unaware of the testimony conflicts but should have been or whether he was aware of conflicts but chose not to seek suppression." *Id.* (citing *Sargent v. Commissioner of Correction,* 121 Conn. App. 725, 740–44, *cert. denied*, 298 Conn. 903, 3 A.3d 71 (2010) (affirming habeas court's conclusion that trial counsel's tactical decision not to pursue motion suppress was reasonable, where hearing on motion to suppress would have given police witnesses a "dry run" and be better prepared at trial)). Accordingly, the habeas court concluded that Attorney Berke's failure to pursue a motion to suppress was a reasonable tactical decision and that the record "supported the conclusion that the biological samples taken from Mr. Benjamin were obtained following the issuance of the search warrant[.]" *See Benjamin v. Warden,* 2018 WL 793898, at *7.

Upon review of the record, this court concludes that the habeas court reasonably applied the relevant *Strickland* standards to Petitioner's claim that Attorney Berke provided ineffective assistance by failing to file a motion to suppress. Notably, Petitioner did not call any of the witnesses who could have testified about the timing of the blood draw so that the habeas court could have evaluated their testimony to determine whether Petitioner incurred prejudice due to Attorney Berke's failure to move to suppress. Moreover, even if Petitioner's blood had been drawn prior to the issuance of the warrant, the warrant was being procured and the blood testing would have been obtained thereafter. Thus, under the inevitable discovery doctrine exception, the evidence from Petitioner's blood testing would still be admissible. *See Murray v. United*

*States*, 487 U.S. 533, 539 (1988) (explaining under inevitable discovery doctrine that body found through illegal source was still admissible because it would have been discovered by the search that had been underway but had been called off due to the discovery of the body); *State v. Cobb*, 251 Conn. 285, 337-39 (1999) (evidence admissible if lawful means for inevitable discovery of evidence was possessed by police and actively being pursed prior to constitutional violation). Accordingly, the habeas petition must be denied on this claim.

**c.   Attorney Berke's Failure to Contact Petitioner's Family Members**

Petitioner claims that Attorney Berke was ineffective for failing to investigate his case because Attorney Berke did not speak to his sister and brother-in-law. Petition, ECF No. 1 at ¶ 19(a). Petitioner maintains that his sister, Michelle Jones, should have been called to testify about his whereabouts on the night the offenses occurred. *See* Pet.'s Habeas Appeal Brief, Resp. App'x. J, ECF No. 16-10 at 10. As stated in Petitioner's appellate brief, Petitioner contends that if Attorney Berke had contacted his sister, Michelle Jones, he would have learned that she was willing to testify at his trial that Petitioner had spent a good portion of his time at her home on the evening of the attacks. *Id.* at 35.

At the habeas trial, Jones testified that her husband had passed away prior to the habeas trial. Resp. App'x. Q (7/21/17), ECF No. 16-45 at 81. Jones stated that the dirt on Petitioner's pant seat could be explained because when he visited her, he would play with her dogs in her yard that had grass and dirt, and that on September 26, 2001, he was at her house from about 4:30 to 10 p.m. *Id.* at 82-83. Specifically, she stated: "That night it would have been maybe around 10 or just a little before 10; around 10. I'm sorry, or a little after. I usually get up around

10 o'clock to go to work that night and [Petitioner was] just getting ready to leave." *Id.* at 83. She indicated further that she was not with Petitioner after she went to work at 10 p.m. *Id.* at 87. She testified that she had tried to speak to Petitioner's attorney but got no response, that she had reached out to a male attorney whose first name was John, and that Petitioner also had a female attorney whose last name was Eschuk.[2] *Id.* at 83-87.

Attorney Berke testified that he remembered "some family member" of Petitioner had been involved in or assisted in his defense, although he could not recall what the relationship of that individual was to Petitioner; that he had mechanisms for family or potential witnesses to reach him; and that he did not recognize Jones after seeing her in the courtroom or hearing her name. *Id.* at 96, 112. He also stated that he did not know whether he would have presented Jones's testimony about Petitioner being at her house from 4:30 to 10 p.m. to a jury at trial, and that the decision would depend upon the closeness in time "between the allegations and the event for it to have significance in [his] eyes." *Id.* at 97.

The habeas court decision did not specifically address this claim. However, the decision reflects that the habeas court reviewed the testimony from Petitioner's sister at his habeas hearing:

> At the trial of this case Mr. Benjamin, who was self-represented, presented testimony from Anita Vailonis, a criminalist at the state lab who testified at Mr. Benjamin's criminal trial, Kevin Daly, who is an attorney that responded to a FOIA request from Mr. Benjamin, and Michelle Jones, Mr. Benjamin's sister. Mr. Benjamin did not testify. The respondent presented testimony from Robert Berke, who was Mr. Benjamin's criminal defense attorney at the underlying criminal trial. The court has considered all of the testimony at trial and has reviewed and considered all the exhibits introduced into evidence, including a transcript of the entire trial that resulted in Mr. Benjamin's convictions.

---

[2] Cara Eschuk served as a prosecutor at Petitioner's trial in 2002. *See* Trial Transcript, Resp. App'x. P, ECF Nos. 16-27, 16-29-16-43; Resp. Brief, ECF No. 16, at 47, n.6.

*Benjamin*, 2018 WL 793898, at *1. Upon review of this evidence, the habeas court concluded that Petitioner's "specific claims of ineffective assistance of counsel fail to satisfy either prong of the *Strickland* analysis." *Id.* at *6. Thus, the denial of the petition constituted an implicit rejection of Petitioner's ineffective assistance of counsel claim based on Attorney's Berke's asserted failure to contact Petitioner's family members.

Upon review of the record, this court concludes that the habeas court's denial of this claim does not constitute an objectively unreasonable application of *Strickland*. Jones's testimony did not identify Attorney Berke whose first name is Robert rather than John, and she provided no further factual support for her assertion of contacting Petitioner's attorney. Moreover, Jones's testimony did not reasonably substantiate that Petitioner had sustained prejudice due to Attorney Berke's failure to call her as a witness. Jones's testimony was unclear about when he left her house and therefore did not necessarily discredit D's testimony that Petitioner had brought her to Fulton Park around 9 or 9:30 p.m. Trial Transcript, Resp. App'x. P (10/16/02), ECF 16-34 at 202, 214. In addition, Jones's testimony would not have provided an alibi for the attack on C, which occurred later during the night some time before 1:00 AM. *See id.* at 45 (lines 13-14).

In addition, Jones's testimony that the dirt on Petitioner's jeans could be explained by his playing with her dogs would not have likely countered what the Connecticut Appellate Court termed as "overwhelming evidence of [Petitioner's] guilt," including the two victims' identification of Petitioner from photographic arrays; the keyless entry to Petitioner's maroon automobile found near the location of D's attack; and the DNA evidence (Petitioner's DNA under D's fingernails; C and D's DNA on Petitioner's boxers; D's DNA on Petitioner's

sweatshirt; C's DNA on Petitioner's T shirt; and D's DNA in a stain on his car window). *See Benjamin,* 86 Conn. App. at 361-62.

Thus, in light of the weaknesses of Jones's testimony for providing Petitioner a potential alibi or counter to the evidence against him in his criminal case, the court concludes that the habeas court reasonably determined that Petitioner's claim did not satisfy the performance or prejudice prongs of *Strickland.*

### D.  Ineffective Assistance Due to Failure to Properly Cross-Examine Witnesses Charles Fontano and Detective Michael Silva (Ground Three)

Petitioner asserts that his trial counsel provided ineffective assistance due to improper cross examination of the State's witnesses, Charles Fontano and Detective Michael Silva. Petition, ECF No. 1. at ¶ 19, p. 15-16 (ground three); *see also* Pet.'s Response, ECF No. 19 at 19 (referencing Pet.'s Habeas Appeal Brief, App'x. J, ECF No. 16-10 at 30-39).

Courts "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Thus, "[t]here is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington v. Richter*, 562 U.S. 86, 109(2011) (quoting *Yarborough v. Gentry,* 540 U.S. 1, 8 (2003) (*per curiam*)). As the Supreme Court explained:

> After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.

*Id.* at 109-110 (citing *Strickland*, 466 U.S. at 688). Thus, the "conduct of examination and cross-examination is entrusted to the judgment of the lawyer," and a reviewing court "should not

second-guess such decisions unless there is no strategic or tactical justification for the course taken." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998). For a cross examination to be constitutionally deficient, a court must find that "'there is no strategic or tactical justification for the course taken.'" *Eze*, 321 F.3d at 127 (quoting *Luciano*, 158 F.3d at 660). However, courts within the Second Circuit afford "significant deference ... [to] a trial counsel's decision how to conduct cross examination," and "refus[e] to use perfect hindsight to criticize unsuccessful trial strategies." *Id.* at 132.

### 1. Fontano

Petitioner argues that Attorney Berke failed to question Fontano about a significant inconsistency in his testimony. *See* Pet., ECF No. 1 at 16; Pet.'s Habeas Appeal Brief, Resp. App'x. J, ECF No. 16-10 at 35-37. Specifically, Petitioner's brief pointed out that Fontano had initially testified at his criminal trial that he was on Walnut Street in Waterbury when he observed C, his girlfriend, enter Petitioner's automobile, but he later corrected himself to say he was on Orange Street. *Id.* at 35-36; Trial Transcript, Resp. App'x. P (10/16/02), ECF No. 16-34 at 134-35. Petitioner argued that he was prejudiced by Attorney Berke's failure to question Fontano about his location, which he maintains could have diminished Fontano's credibility and the strength of the State's case by showing "how unlikely" it was that Fontano was on Orange Street, and that he could not have seen the car if he was on Walnut Street instead. Pet.'s Habeas Appeal Brief, Resp. App'x. J, ECF No. 16-10 at 37.

At the habeas trial, Attorney Berke testified that a decision about whether he will pursue witness testimony inconsistencies depends upon the significance of the particular inconsistency and that he would not challenge other inconsistencies that would not be "worthwhile" and could

26

result in "annoying" the jury. Habeas Transcript, Resp. App'x. Q (7/21/17), ECF No. 16-45 at 99-100. He indicated that it was typically his strategy to impeach a witness's credibility when possible, although there were times when he was "better off staying quiet." *Id.* at 107, lines 18-23.

The transcript from Petitioner's criminal trial reflects that Attorney Berke did impeach Fontano's credibility on cross-examination: he was able to have Fontano admit to providing a signed statement to the police under a false name due to warrants against him; that the police statement (which Fontano had reviewed) indicated he had informed the police that C was pulled in through the car window without fighting back, although he later disputed that he had said through the window; that he was fifty feet away from the car and could not "see around the car;" that he used heroin and crack with C on the evening of the attack; and that he was in custody serving a sentence and had prior convictions for larceny and burglary. Trial Transcript, Resp. App'x. P (10/16/02), ECF No. 16-34 at 149-157, 160.

The state habeas court noted:

Mr. Benjamin also claims that Attorney Berke did not cross examine an eyewitness, Charles Fontano, thoroughly and aggressively enough. Mr. Fontano was in a romantic relationship with one of the victims. He initially testified that he was on Walnut Street in Waterbury when he observed his girlfriend enter Mr. Benjamin's car. He then corrected himself, without any prompting, to say that he was on Orange Street. He later found his girlfriend on Walnut Street after she had been assaulted. Attorney Berke did not cross examine Mr. Fontano on his initial confusion over which street the victim was on when she entered the car. He did cross examine him, however, on the inconsistency between his testimony at trial and the statement he gave to the police indicating that his girlfriend had been pulled into Mr. Benjamin's car through the passenger side window. The victim herself testified that she had entered the car voluntarily and not through the window. Attorney Berke testified at the habeas trial, not surprisingly, that as trial counsel he does not pursue every inconsistency in the testimony of a witness. He pursues the ones he considers significant, and not the ones "that are just annoying to a jury." He appears to have followed that practice in this instance.

*See Benjamin v. Warden*, 2018 WL 793898 at *4.[3] The habeas court concluded that Attorney Berke's decision not to cross examine Fontano on his initial misstatement about his location "was a reasonable tactical decision by counsel" and that Petitioner failed to show that Fontano's confusion "was of critical significance to his convictions." *See Id.* at *7. At his habeas trial, Petitioner failed to call Fontano as a witness to demonstrate what facts a different cross-examination would have revealed.

The record as a whole demonstrates that Attorney Berke elicited testimony to undermine Fontano's credibility. The habeas court reasonably determined that Attorney Berke's decision not to cross examine Fontano relevant to his prior testimony about his location was a strategic or tactical decision. Thus, the Court concludes the habeas court reasonably applied the highly deferential standard in *Strickland* to Petitioner's ineffective assistance claim based on Attorney Berke's cross examination of Fontano. This claim for habeas relief must be denied.

### 2. Detective Silva

Petitioner asserts that his trial counsel provided ineffective assistance in his cross-examination of Detective Michael Silva of the Waterbury Police Department. Petition, ECF No. 1 at 15-16; Pet. Response, ECF No. 19 at 19. In his brief on appeal of the state habeas decision, Petitioner argued:

> Attorney Berke's cross-examination of Detective Silva did not establish
> that his examination of the clothing evidence, done after the clothes were bagged,

---

[3]Petitioner's brief on appeal of the state habeas decision challenged the habeas court's characterization of Fontano's correction "without prompting." Pet.'s Habeas Appeal Brief, Resp. App'x. J, ECF No. 16-10 at 36-37. The record reflects that the State's Attorney showed Fontano a photograph of the Walnut street area and that he first indicated he was coming down Walnut Street; after she asked him if he was "coming down" a street shown on the photograph, he corrected himself, stating "No, it was right here coming down. I believe that is Orange Street." Trial Transcript, Resp. App'x. P (10/16/02), ECF No. 16-34 at 133-35. Thus, the transcript shows that the State's Attorney did not directly coach Fontano to change his testimony about his location. Accordingly, the habeas court reasonably characterized Fontano's self-correction as "without any prompting." *See id.*

sealed and deposited in the evidence room contaminated the various articles of clothing. Although at the habeas trial, Attorney Berke recalled having Detective Silva admit that he had [] deposited [the] various articles of clothing on the same floor after he examined them and possibly caused touch cross contamination, this admission alone was not sufficient to [create] a strong enough inference that Detective Silva had tampered with the evidence in a manner that disadvantaged the petitioner's defense.

*See* Pet.'s Habeas Appeal Brief, Resp. App'x. J, ECF No. 16-10 at 38.

The habeas court concluded that "Attorney Berke conducted substantive and pointed cross-examination of the state's witnesses at [petitioner]'s trial[.]" *Benjamin v. Warden*, 2018 WL 793898, at *3. The court noted that Attorney Berke had questioned the propriety of Detective Silva's conduct in taking Mr. Benjamin's clothing out of the sealed bags, purportedly to photograph them, and handling those items in such a way as to risk cross contamination[,]" and that "Attorney Berke testified at the habeas trial that although Mr. Benjamin contended the evidence was fabricated, his own judgment was that there was insufficient evidence to establish that contention and Attorney Berke believed there were more fruitful grounds for cross examination of the police witnesses." *Id.* The court observed further that Attorney Berke applied a reasonable strategy by seeking "to expose the improprieties in the handling of evidence before the jury and allow the jury to draw its own conclusions." *Id.*

The trial transcript reflects that Attorney Berke's cross-examination of Detective Silva challenged the police evidence collection methods and handling of evidence that could have created a risk of cross contamination with respect to the DNA evidence. Resp. App'x. P, ECF No. 16-39 (10/24/02) at 114-143. He specifically questioned Detective Silva about photographing evidentiary items on the floor of the police department and whether that was acceptable protocol for avoiding contamination. *Id.* at 141 (lines 4-9). He also questioned Detective Silva about why certain clothing items were placed on a bed overlapping each other

while being photographed and queried whether doing so would defeat the purpose of separating the items to avoid cross-contamination. *Id.* at 142-143. Notably, Petitioner did not call Detective Silva to testify at the habeas trial so that he could demonstrate that Attorney Berke should have conducted a different cross examination or that Attorney Berke's cross examination prejudiced him.

After review of the record, the court concludes that the habeas court rendered a reasonable application of *Strickland*'s highly deferential standard to Petitioner's claim of ineffective assistance of counsel based on Attorney Berke's cross examination of Detective Silva. Accordingly, the Petitioner's request for habeas relief must be denied on this ground.

## IV.    CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus [ECF No. 1] is **DENIED**. The clerk is directed to enter judgment in favor of Respondent and to close this case.

Any appeal from this order would not be taken in good faith because Petitioner has not shown that he was denied a constitutionally or federally protected right. Thus, a certificate of appealability will not issue.

SO ORDERED at Hartford, Connecticut this 28th day of April, 2021.

_____/s/_____

Michael P. Shea
United States District Judge
